# Exhibit C

Harris v Scottrade 2014

In the Matter of FINRA Arbitration

Jan Harris
Claimant

v.

Statement of Claim

Scottrade Inc.
Respondents

## NATURE OF CLAIM

State and federal law require Respondent to comply with my entitlement order and deliver my fully paid 80,000 shares of Bancorp International Group Inc. ("BCIT") common stock in certificate form. Respondent is refusing to do so.[1] I am requesting this panel ORDER respondent to comply with my order and register my 80,000 BCIT shares in my name as the FINRA arbitrator did in *Lusk v Scottrade* (FINRA case # 14-00211) on August 13, 2014 ("Respondent shall deliver to Claimants a physical share certificate of their BCIT shares.")[2]

## HISTORY

In 2011, I filed with FINRA Dispute Resolution a similar claim regarding these 80,000 BCIT shares. Respondent told the arbitrator that a Depository Trust Company ("DTC") global lock on BCIT securities prohibited respondent from registering my shares and the arbitrator denied my claim.[3] Respondent's legal representatives misled the arbitrator as there is no SEC approved DTC rule which prohibits respondent from directly registering my BCIT ownership. Respondent's conduct amounts to fraud on the court.[4] My BCIT ownership rights remain intact and enforceable as do respondents statutory obligations. I have filed this claim to enforce my rights and respondent's duties. Respondent has no legitimate basis for refusing to comply with my request to directly register, in my name, my 80,000 shares of BCIT.

---

[1] *See* Exhibit 1 (2014 Demand letter) and Exhibit 2 (September 2014 Account Statement).
[2] *See* Exhibit 4 (*Lusk v Scottrade* (FINRA # 14-00211) decided August 13, 2014).
[3] *See* Exhibit 3 (*Harris-Kimball v Scottrade* (FINRA # 11-00018) decided September 20, 2011)
[4] *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238 (1944); FINRA rule 2010.

1 of 5

Harris v Scottrade 2014

## FACTS

Respondent holds, and has held for many years, my 80,000 shares of BCIT common stock in my "securities account".[5] I receive monthly account statements from respondent which evidence my ownership and I hold a legal right, under both state and federal law, to have my fully paid BCIT shares directly registered and a BCIT certificate issued in my name.[6] "When you buy a security, whether through your broker or from the company itself, you can ask to have the actual stock or bond certificates sent to you."[7] The BCIT shares I am entitled to are issued in certificate form and are fully transferable.

## STATE LAW CREATES — THE CONSTITUTION PROTECTS

Upon the settlement of a securities transaction, state created property rights are established—property rights of constitutional magnitude. Having established that my BCIT purchases settled in 2005, my BCIT ownership rights are enforceable property rights. The burden is on respondent to prove there is an SEC approved DTC rule which prohibits respondent from registering my 80,000 shares of BCIT in my name.[8]

## DTC RULES

The Securities and Exchange Commission ("SEC") governs entities such as respondent and the DTC. The DTC is a clearing agency. Clearing agency rules must be approved by the SEC and in 1980 the SEC adopted standards for clearing agencies which require clearing agency rules be designed and implemented so that brokerages can comply with their legal

---

[5] "Security entitlement", "securities account", "entitlement holder" and "entitlement order" are statutorily defined in UCC Revised Article 8. UCC Revised Article 8 is enacted by all 50 states in nearly identical form. It has also been adopted by the Federal Government for book-entry securities, and is referred to by the SEC in generic form as UCC Revised Article 8. *See* U.C.C. §§ 8-501 to 8-511 (2011) (explaining the securities entitlement of a beneficial owner and statutory obligation of securities intermediaries); *See also* 17 CFR 240.15c3-3.

[6] *See* 17 CFR 240.15c3-3(l), UCC 8-508 and UCC Revised Article 8 *generally*.

[7] http://www.sec.gov/investor/pubs/holdsec.htm *See* 17 CFR 240.15c3-3, UCC Revised Article 8.

[8] 17 CFR 240.15c3-3(b)(2) ("The burden of proof shall be on the broker...to establish that the failure to obtain physical possession or control of securities carried for the account of customers...is merely temporary").

obligations to customers under 17 CFR 240.15c3-3.[9]

17 CFR.240.15c3-3(l) states: " [It is] the absolute right of a customer of a broker or dealer to demand and receive ...the physical delivery of certificates for fully-paid securities to which he is entitled."[10] There is no DTC rule which relieves respondent of that obligation to comply with my demand.

## THE LIMITED SCOPE OF A DTC GLOBAL LOCK

The DTC registered with the SEC as a clearing agency in 1983. The SEC adopted the standards for clearing agencies in 1980[11] three years prior to the DTC's registration and those clearing agency standards prohibit the DTC from implementing "service restrictions" which interfere with respondent's obligations under 17 CFR 240.15c3-3, including respondent's obligation to deliver a customer's fully paid securities to the customer in the form the customer chooses.[12]

The DTC imposed a "global lock" on BCIT in August 2005. DTC global locks are "service restrictions" but respondent has been misrepresenting to arbitrators the scope of the DTC's service restrictions ever since my 2011 claim. This misrepresentation by respondent is not a mere mistake or omission, respondent knows the federal rules it is governed by. Respondent's misrepresentations are substantial, intentional and meant to deceive arbitrators. If DTC service restrictions relieved respondent of its statutory obligations found under 17 CFR 240.15c3-3 [13], that would override the clearing agency standards set in 1980. An override would have to be approved by the SEC. There is no SEC approved override, just as there is no DTC rule prohibiting respondent from transferring my BCIT ownership out of street name and registering

---

[9] 45 Fed. Reg. 41920, 41930 n. 57 (June 23, 1980).
[10] 17 CFR 240.15c3-3(l)
[11] 45 Fed. Reg. 41920, 41930 n. 57 (June 23, 1980).
[12] 17 CFR 240.15c3-3(l), UCC 8-508.
[13] Among respondent's statutory obligations relevant to my claim are those found under UCC 8-504, UCC 8-506, UCC 8-507, UCC 8-508 and 17 CFR 240.15c3-3(b),(h) and (l). *See* 17 CFR 240.15c3-3 and UCC Revised Article 8 generally.

Harris v Scottrade 2014

my BCIT ownership in my name. If there was, that rule would have been published in the Federal Register and there is no such SEC approved rule published in the Federal Register.

In addition, until late 2012, respondent was able to hide the fact that the DTC does not "hold" any of respondent's customer's BCIT shares. An investigation by a British firm of legal consultants consisting of ex-Scotland Yard detectives and attorneys revealed in 2012 that the BCIT shares of common stock which respondent purchased for me are not registered in the name of the DTC nominee Cede & Co., rather they are held outside the DTC in certificate form. What the DTC does "hold" is an accounting ledger which shows brokerages such as respondent owe hundreds of millions of shares of BCIT common stock to their customers, all of which are held outside the DTC and not affected by any DTC service restrictions except the restriction that the DTC will not allow them to be <u>deposited</u> at the DTC.

Respondent and other brokerages are using this DTC accounting to fraudulently represent to arbitrators that their customer's BCIT shares are on deposit at the DTC. Respondent and other brokerages are fraudulently representing to arbitrators that a DTC rule prohibits them from registering their customers BCIT shares in the customer's name. When lawyers lie to a court, as respondent is doing to arbitrators, it is considered fraud on the court.

As far as I am aware of, out of 33 BCIT cases, only three arbitrators have stepped up to protect BCIT shareholder's property rights. In *Grabowski v. TD Ameritrade* the FINRA arbitrator ORDERED TD Ameritrade in January 2013 to obtain and certify Mr. Grabowski's 25,000 BCIT shares.[14] TD Ameritrade claimed it could not comply and the arbitrator then ordered a "buy-in" and TD Ameritrade reimbursed Mr. Grabowski for that buy-in. In *Magruder v Fidelity* an award was made on March 22, 2014[15] and most recently in *Lusk v Scottrade*, the arbitrator's award includes a simple statement ordering Scottrade to deliver the customers BCIT stock certificate.

---

[14] *See Grabowski v TD Ameritrade* ( FINRA # 12-01838, order January 2013, final award May 2013)
[15] See EXHIBIT 6, March 22, 2014 Award *Magruder v Fidelity* (FINRA #

Harris v Scottrade 2014

## CONCLUSION

Respondent is statutory required by both state and federal law to directly register my 80,000 shares of BCIT common stock. The shares I am entitled to are issued but have yet to be transferred into my name because respondent is negligent in its duties, not because a DTC rule prohibits them from doing so. The SEC has never approved a rule which relieves respondent of their obligation to deliver my BCIT securities in certificate form. Respondent has no legitimate basis to further delay compliance with my entitlement order to directly register my ownership of the 80,000 shares of BCIT in my IRA account.

I respectfully request this panel:

a.) AWARD in my favor and ORDER that respondent shall directly register and deliver to me a BCIT stock certificate for my 80,000 shares of BCIT common stock.

b.) ORDER respondent pay to me one dollar in compensatory damages.

c.) ORDER respondent reimburse me for all my costs to enforce my claim as my costs are a direct result of respondent's breach of the obligation of good faith and fair dealing and the just and equitable principles of trade.

Dated this 4th day of November 2014

Jan Harris
Pro Se Claimant
3519 NE 15th Ave #224
Portland, Oregon
97212
541.207.4026
jhk29@hotmail.com

**EXHIBITS**

1. 2014 Demand Letter
2. September 2014 Account Statement
3. Harris-Kimball v Scottrade (FINRA case # 11-00018)
4. Scottrade v Lusk (FINRA case # 14-00211)
5. Magruder v Fidelity ( FINRA # 13-02841)
6. Grabowski v TD Ameritrade ( FINRA # 12-01838)

EXHIBIT 1 page 1

Scottrade Inc.
PO Box 31759
St. Louis, Missouri
63131-0759

Date: May 27, 2014

RE: Account # ▓▓▓▓6084

Dear Mr. Roger Riney, CEO; Matt Wilson, Brokerage President; and Scottrade Compliance:

    I am requesting my ownership of the 80,000 Bancorp International Group Inc. (BCIT) shares held in my IRA account # ▓▓▓▓6084 be changed into the form of a stock certificate registered in my name. On May 6, 2014, in a letter addressed to the SEC, Isaac Montal Managing Director and Deputy General Counsel for the DTCC stated the following: " *Neither a Deposit Chill nor a Global Lock prevents trading of an affected security.*"

    There is no more authoritative source on DTC globally locked securities than Mr. Isaac Montal, Managing Director and Deputy General Counsel for the DTCC. His letter is public and published by the SEC and he states that a Global Lock does not prevent trading of an affected security. Trading involves the transfer of ownership from a seller to a buyer. Mr. Isaac Montal's statement confirms that a DTC global lock does not prevent trading or transfer of affected securities which means a global lock does not prevent Scottrade from transferring my BCIT ownership out of street name into my name. Mr. Riney or Mr. Wilson or Scottrade's Compliance Department can confirm this with Mr. Isaac Montal.

    My BCIT securities are fully paid and this letter is my demand. The transfer agent is Empire Stock Transfer Inc. I will be responsible for any IRS tax or penalties associated with my request. Please instruct the transfer agent to deliver the stock certificate he issues representing my ownership of 80,000 shares of BCIT to me at the address provided below. In the event Scottrade refuses to comply with my ownership request, I will have no choice but to pursue legal action against Scottrade to protect my property interest in Bancorp International Group Inc. which was valued recently at $2.75 per share.

Sincerely,

Jan E. Harris
3519 NE 15th Ave. pmb #224,
Portland, Oregon 97212
541.207.4026
Jhk29@hotmail.com

EXHIBIT 1 page 2

Niels P. Murphy
1501 San Marco Boulevard
Jacksonville, Florida 32207
July 23, 2014

Dear Mr. Murphy,

    Thank you for informing me in your letter dated June 27, 2014 that your firm continues to represent Scottrade in this matter. While you are correct these 80,000 Bancorp International Group Inc. ("BCIT") shares were the subject of FINRA case # 11-00018, you are mistaken that this matter has been disposed of as that will not happen until Scottrade directly registers my ownership of these shares.

    Scottrade holds my shares as security entitlements in my securities account which means my ownership of 80,000 shares of BCIT is registered on Scottrade's books. As the beneficial owner, I have the right to transfer my ownership to another brokerage or have my ownership directly registered in my name. Ms. O'Neil's 2011 arbitration decision does not prevent me from asserting, or if necessary enforcing by action, any of my ownership or property rights.

    As you know, subsequent to Ms. O'Neil's 2011 decision, it was established that the DTC was not and never has been the custodian of the BCIT shares Scottrade purchased for its customers in 2005. Because Scottrade executed my purchases after the DTC established its global lock, Scottrade was required to obtain physical delivery of my BCIT shares directly from the seller. Mr. Montal's May 6, 2014 statement establishes the fact that it is not impossible for Scottrade to initiate a buy-in of the seller or obtain my BCIT shares from another source.

    As you will be handling this matter for Scottrade, please direct Scottrade to promptly obtain physical delivery of my BCIT securities and then direct Empire Stock Transfer Inc., BCIT's transfer agent, to issue a BCIT certificate for my 80,000 shares in my name and mail it to me at the address below. I will be responsible for any taxes or fees owed to the IRS that result from my removing 80,000 BCIT shares from my Scottrade IRA account.

    If, Scottrade refuses to perform its duty to directly register my BCIT ownership, I will proceed to enforce, in court, my ownership rights. Please contact me at jhk29@hotmail.com if you have any questions or would like to discuss this matter.

                              Sincerely,

                              Jan E. Harris
                              3519 NE 15th Avenue pmb224
                              Portland, Oregon 97212

# Scottrade

SCOTTRADE INC CUST FBO
JAN E HARRIS ROTH IRA
3519 NE 15TH AVE #224
PORTLAND OR 97212

■■84  (09/2014)  Page 1 of 2

**BrokerageOne**

SCOTTRADE INC
4641 COMMERCIAL ST SE
SALEM OR 97302
(503) 391-5700

| Account Number | Office |
|---|---|
| ■■■84 | 36E |

| Period Beginning | Period Ending |
|---|---|
| 09/01/2014 | 09/30/2014 |

## INFORMATION UPDATE

Thank you for helping us rank "Highest in Investor Satisfaction with Self-Directed Services."

Scottrade received the highest numerical score among self-directed investing service providers in the proprietary J.D. Power 2014 Self-Directed Investor Satisfaction Study℠. Study based on responses from 3,764 investors measuring 10 providers and measures satisfaction of self-directed investors. Proprietary study results are based on experiences and perceptions of consumers surveyed in January-February 2014. Your experiences may vary. Visit jdpower.com Scottrade - Member FINRA/SIPC.

## ACCOUNT SUMMARY

| | VALUE THIS PERIOD |
|---|---|
| VALUE SECURITIES IN POSITION | 579.01 |
| MONEY BALANCES: | |
| BANK DEPOSIT PROGRAM BALANCE* | 245.35 |
| BROKERAGE ACCOUNT BALANCE | 0.00 |
| TOTAL MONEY BALANCE | 245.35 |
| TOTAL ACCOUNT VALUE | 824.36 |

## ACTIVITY SUMMARY

| | |
|---|---|
| OPENING TOTAL MONEY BALANCE | 245.35 |
| CREDITS: | |
| DIVIDEND/INTEREST INCOME | 0.00 |
| OTHER CREDITS | 0.00 |
| TOTAL CREDITS | 0.00 |
| DEBITS: | |
| DIVIDEND/INCOME EXPENSE | 0.00 |
| OTHER DEBITS | 0.00 |
| TOTAL DEBITS | 0.00 |
| CLOSING TOTAL MONEY BALANCE | 245.35 |

**Current Tax Strategy**\*\*
Stocks, Options & Bonds: FIFO
Funds: FIFO

## SECURITY POSITIONS



| Type | Symbol / Cusip | Quantity | Description | Estimated Market Price | Estimated Market Value | % | Estimated Annual Income | Cur. Yld |
|---|---|---|---|---|---|---|---|---|
| CASH | (AWR) | 6 | ALL WORLD RESOURCES RSTD NO BUY/NO SELL | 0.00 | 0.00 | 0.00 | | |
| CASH | (BCIT) | 80,000 | BANCORP INT'L GROUP *NO BUY/NO SELL GLBL LOCK/DELISTED 110909 | 0.00 | 0.00 | 0.00 | | |
| CASH | GMEDN | 10,000 | GENOMED INC *NOT TRADING AS OF 040910 | 0.00 | 0.00 | 0.00 | | |
| CASH | (MAMG)# | 1 | MEDIA MAGIC *NO BUY/NO SELL | 0.00 | 0.00 | 0.00 | | |
| CASH | NRWS | 2,000 | NARROWSTEP | 0.0003 | 0.60 | 0.10 | | |
| CASH | (RMDM) | 1 | RMD ENTERTAINMENT GROUP COM *NO BUY/NO SELL | 0.00 | 0.00 | 0.00 | | |
| CASH | (SYNJD) | 1 | SYNDICATION INC RSTD | 0.00 | 0.00 | 0.00 | | |
| CASH | TRDMN | 45,000 | TREND MINING COMPANY NOT TRADING AS OF 030613 | 0.00 | 0.00 | 0.00 | | |
| CASH | UCPA | 300,000 | UNITED COMMUNICATIONS PARTNER | 0.0019 | 570.00 | 98.44 | | |
| CASH | VIPK | 100 | VIP COMLINK | 0.0001 | 0.01 | 0.00 | | |
| CASH | XLPI | 42,000 | XCEL PLUS INTL | 0.0002 | 8.40 | 1.46 | | |
| | | | TOTAL | | 579.01 | 100% | 0.00 | |

## BANK DEPOSIT PROGRAM BALANCE

| PROGRAM BANK | OPENING BALANCE | CLOSING BALANCE |
|---|---|---|
| U.S. BANK, NA | 245.35 | 245.35 |
| TOTAL PROGRAM BALANCE | 245.35 | 245.35 |

*Bank Deposit Program (BDP) deposits are held at the banks listed above. Deposits in BDP Accounts are eligible to be insured by the FDIC up to $250,000 per depositor. Details on FDIC deposit insurance coverage and limits ions are available at www.fdic.gov/deposit. If clients have any additional deposits at any of the above banks, they should monitor the total amount of deposits with any one bank to recognize whether they are exceeding FDIC insurance coverage. Scottrade Bank and Scottrade, Inc. are separate but affiliated companies. Securities products offered by Scottrade, Inc. are not deposit obligations of any of the listed banks, are subject to investment risk, are not FDIC insured, may lose value and are not bank-guaranteed.

The balance in the Bank Deposit Program in which you have a beneficial interest can be liquidated on your order and the proceeds returned to your brokerage securities account or remitted to you.

** You can review cost basis information for your account by clicking on the My Account tab after logging into your account and then clicking on "Gain/Loss & Tax Center". Unless you instruct otherwise, Scottrade will use the first in, first out (FIFO) method to calculate your gains and losses. When determining cost basis, Scottrade's default method of tax lot selection is First In, First Out (FIFO). Cost basis educational material can be found in the Knowledge Center, accessible through your account online.

The About Your Statement document can be accessed online by logging into your Scottrade account and going to My Account>Account History>Account Statements.

**AWARD**
**FINRA DISPUTE RESOLUTION**

CASE: 11-00018
Jan E. Harris-Kimball, Jan E. Harris-Kimball ROTH IRA, and Jan E. Harris-Kimball Traditional IRA (Claimants) vs. Scottrade Inc., A wholly-owned subsidiary of Scottrade Financial Services, Inc. (Respondent)

**REPRESENTATION OF PARTIES:**
For Claimants appeared Jan E. Harris-Kimball, Philomath, OR.

For Respondent appeared Niels P. Murphy, Esq., Murphy & Anderson, P.A., Jacksonville, FL.

**NATURE OF DISPUTE:** Customers vs. Member

DATE FILED: December 29, 2010

CASE SUMMARY: Claimants asserted the following cause of action: breach of contract.

The cause of action relates to Bancorp International Group, Inc. common shares.

ARBITRATOR'S REPORT: Claimant, Jan E. Harris-Kimball, represents herself and seeks damages from Respondent because it has not delivered share certificates of Bancorp International Group, Inc. [BCIT] owned by her and her IRA accounts. Respondent characterizes the relief sought as inexplicable and, to persons professionally familiar with the workings of the financial industry, it is. Unfortunately for Claimant, Jan E. Harris-Kimball, it is also inexplicable to any person who reads the Scottrade Brokerage Agreement that she signed.

Respondent is correct. Claimant, Jan E. Harris-Kimball, was a self-directed investor. She chose to buy BCIT. Respondent did not make that choice for her. Any resultant losses are because of her choice, not a choice made by Respondent.

Claimants now seek delivery of the BCIT shares. Respondent is not willfully refusing to deliver the shares. It cannot deliver the BCIT shares because of the actions of a third party, the Depository Trust & Clearing Corporation [DTCC], which placed a "global lock" on BCIT, shares on August 16, 2005. The global lock means that the subject shares are not eligible for delivery, transfer or withdrawal by any person or entity.

The Scottrade Agreement specifically provides that Respondent will not be liable for any loss caused directly or indirectly by suspension of trading of a stock such as that of BCIT.

When she signed the Scottrade Agreement, Claimant, Jan E. Harris-Kimball, assumed the risk that BCIT shares would lose value and, for that matter, that trading in the BCIT shares could be suspended. Because trading has been suspended,

Page Two
Award 11-00018

Respondent cannot deliver the shares that Claimants seeks. Claimants also assumed this risk that results from the suspension of trading in BCIT.

Respondent has no liability for either loss of value or the suspension of trading and the global lock. The relief that Claimants seeks is denied.

| Claim Data | Award Data |
|---|---|
| Claim: $12,000.00 | Award: $0.00 |
| Costs: Unspecified | Costs: $212.50 |
| Other: Unspecified | Other: $0.00 |
| Specific Performance: reimburse accounts for the costs to obtain genuine certificates | Specific Performance: Denied |

AWARD: The undersigned Arbitrator has decided and determined in full and final resolution of the issues submitted for determination as follows: 1) Claimants' claims are denied in their entirety. 2) Claimants' request for reimbursement to accounts for the costs to obtain genuine certificates is denied. 3) FINRA Dispute Resolution shall retain the $425.00 filing fee previously deposited by Claimants. 4) Respondent is liable for and shall pay to Claimants costs in the amount of $212.50 to reimburse Claimants for one-half of the filing fee previously paid to FINRA Dispute Resolution. 5) All other relief requests are denied.

OTHER FEES: Respondent was assessed the $425.00 Member Surcharge.

OTHER ISSUES: By letter dated February 23, 2011, Claimants requested an explanation of the Arbitrator's decision. The Arbitrator, after due consideration, has granted Claimants' request.

The Arbitrator acknowledges that she has read the pleadings and other materials filed by the parties.

EXHIBIT 3 page 3

Page Three
Award 11-00018

Katherine H. O'Neil                        Sole Public Arbitrator

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument which is my award.

*Katherine H. O'Neil*              13 Sept 2011
                                       (Signature Date)

September 20, 2011
Date of Service (For FINRA-DR office use only)

EXHIBIT 4

**AWARD**
**FINRA DISPUTE RESOLUTION**

**CASE #: 14-00211**
Dwayne Lusk and Susan Lusk (Claimants) vs. Scottrade Inc. (Respondent)

**REPRESENTATION OF PARTIES:**
Claimant Dwayne Lusk and Susan Lusk appeared pro se.

For Respondent Scottrade Inc.: Niels P. Murphy, Esq. and Lawton R. Graves, Esq., Murphy & Anderson, P.A., Jacksonville, Florida.

**NATURE OF DISPUTE:** Customers vs. Member

Statement of Claim filed on or about: January 23, 2014.

**CASE SUMMARY:** Claimants asserted the following cause of action: failure to transfer and deliver shares.

The cause of action relates to Bancorp International Group Inc..("BCIT") shares.

**RELIEF REQUESTED:** In the Statement of Claim, Claimants requested:

| | |
|---|---|
| Compensatory Damages: | $2,177.00 |
| Costs: | $ 75.00 |
| Specific Performance: | Deliver physical share certificate of BCIT shares |
| Other: | Unspecified |

**AWARD:** The undersigned Arbitrator has decided and determined in full and final resolution of the issues submitted for determination as follows: 1) Respondent shall deliver to Claimants a physical share certificate of their BCIT shares! 2) Claimants' request for compensatory damages is denied. 3) FINRA Dispute Resolution shall retain the $75.00 filing fee that the Claimants deposited previously. 4) Respondent is liable for and shall pay to Claimants $75.00 to reimburse Claimants for the filing fee previously paid to FINRA Dispute Resolution. 4) All other relief requests are denied.

**OTHER FEES:** Respondent has paid to FINRA Dispute Resolution the $150.00 Member Surcharge previously invoiced.

**OTHER ISSUES:** The Arbitrator acknowledges that he has read the pleadings and other materials filed by the parties.

EXHIBIT 5

## FINRA Dispute Resolution

### Addendum to Simplified Case Checklist

Case Number: 13-02841
Case Name: Michael W. Magruder vs. Fidelity Brokerage Services LLC

Paragraph 5 of the Checklist requires a statement of any award granted to Claimant. The following is that award:

Claimant, Michael W. Magruder, is entitled to receive from Respondent, Fidelity Brokerage Services LLC, a certificate or certificates of Bancorp International Group Inc. (BCIT) issued in his name for the 940,000 shares of BCIT held in his account No. Z41-973220 at Respondent, showing him as the registered owner on the stock record books of BCIT, and bearing CUSIP No. 05968X205, and shall be freely tradable without any restriction on Claimant's alienation of the shares represented by such certificate or certificates.

To effect this award, Respondent shall take such action and shall use every manner and means, as may be necessary, appropriate or desirable, to contact any and all parties that may be involved in the process of effecting such issuance in order to have such issuance made and the terms of this award satisfied in full.

Respondent shall satisfy this award at its own expense and within 90 days after the date of issuance of the final Order in this matter. If Respondent is unable to so satisfy this award within such time period, it shall file a motion in this matter seeking such additional time to satisfy the award as is reasonable, and describe in that motion all actions taken by Respondent and the other parties referred to in the preceding paragraph related to such issuance and what additional actions may be required to effect such issuance.

Upon such issuance and delivery of such certificate or certificates to Claimant, Claimant's requests for actual damages, punitive damages, additional expenses of $600.00, and all other relief sought by him shall be Denied, and this arbitration concluded.

_____
G. Gale Roberson, Jr., Sole Arbitrator          Date: March 22, 2014

EXHIBIT 6

page 1

**AWARD**
**FINRA DISPUTE RESOLUTION**

CASE #: 12-01838
Christopher Grabowski (Claimant) vs. TD Ameritrade, Inc. (Respondent)

**REPRESENTATION OF PARTIES:**
Claimant Christopher Grabowski appeared pro se.

For Respondent TD Ameritrade, Inc.: Hollie M. Mason, Esq., TD Ameritrade, Inc., Omaha, Nebraska.

**NATURE OF DISPUTE:** Customer vs. Member

Statement of Claim filed on or about: May 12, 2012.

**CASE SUMMARY:** Claimant asserted the following causes of action: fraud, wrongful or criminal deception.

The causes of action relate to the purchase of shares of Bancorp International Group, Inc.

**RELIEF REQUESTED:** In the Statement of Claim, Claimant requested:

| | |
|---|---|
| Compensatory Damages: | $1,000.00 |
| Punitive Damages: | $1,000.00 |
| Other: | return of stock |

**AWARD:** The undersigned arbitrator has decided and determined in full and final resolution of the issues submitted for determination as follows: 1) Claimant's claims are denied in their entirety with prejudice. 2) All requests for punitive damages are denied. 3) All other relief requests are denied. 4) FINRA Dispute Resolution shall retain the $75.00 filing fee that the Claimant deposited previously.

**OTHER FEES:** Respondent has paid to FINRA Dispute Resolution the $150.00 Member Surcharge previously invoiced.

**OTHER ISSUES:** The Arbitrator acknowledges that he has read the pleadings and other materials filed by the parties.

On March 18, 2013, the Arbitrator ordered Claimant to purchase 25,000 shares of BCIT, including the Private Treaty Certificates, and also ordered Respondent to reimburse Claimant the entire purchase price and expenses related to the purchase.

FINRA Dispute Resolution
Arbitration No. 12-01838
Award Page 2 of 3

EXHIBIT 6

page 2

Upon receiving notice that the parties had complied with the March 18, 2013 Order, the Arbitrator denied Claimant's claims with prejudice since the claims are now moot.

Claimant requested additional relief for additional expenses by letter dated April 14, 2012. After due consideration the Arbitrator denied Claimant's request.